IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| LYNNETTE HERNANDEZ,<br><br>      Plaintiff,<br><br>  vs.<br><br>CITY OF SALEM, a Municipal Corporation and ANDREW CONNOLLY, an individual,<br><br>      Defendants. | Civ. No. 06-6161-TC<br><br>AMENDED<br><br>ORDER AND OPINION |

Coffin, Magistrate Judge:

    Plaintiff, Lynnette Hernandez, brings this civil rights action against defendant City and defendant Connolly alleging a violation of 42 U.S.C. § 1983 and various state law claims. Defendants moved for summary judgment, and the court heard oral argument on the motion on July 17, 2007. For the reasons outlined below, the court denies summary judgment in part and grants summary judgment in part. This order and opinion is amended to correct a typographical error on page 10.

## Factual Background

    The parties are familiar with the factual background. Accordingly, the factual details will be set forth below only as they are relevant to the instant motion.

1 Opinion and Order

Plaintiff's claims stem from her arrest on the night of August 21, 2005. At the time relevant to this case, plaintiff was a bartender at the La Playa Cantina, which is an establishment licensed to sell liquor by the Oregon Liquor Control Commission (OLCC). The La Playa is located in the Plaza Del Sol, next to the Tropicana Lounge, which is a dance club for minors and is not licensed to sell alcohol. The La Playa and the Tropicana share a common hallway, so it is possible for patrons to have access between the two establishments without having to exit and re-enter the building.

On the night of August 21, 2005, defendant Connolly was on duty. At approximately 12:50 a.m., Connolly and his partner were driving a marked police car back to the station to end their shift. Because Connolly knew that problems often occurred in the Plaza Del Sol parking lot, he wanted to drive through the parking lot on the way back to the station.

As Connolly drove through the parking lot, he saw a man spray another in the face with pepper spray. The pepper sprayed man entered the Tropicana. Believing he may have witnessed a crime, Connolly entered the Tropicana to investigate as well as to determine if the man needed medical attention, despite protests by Plaza Del Sol security personnel. Connolly located the man in the Tropicana in the men's room. The man told Connolly that he did not need medical attention and did not wish to press charges.

///

///

///

2 Opinion and Order

On his way to the men's room, Connolly had observed several alcoholic beverage containers on tables in the Tropicana. Connolly knew that it was a violation of OLCC rules for alcohol to be in the Tropicana; he knew that the Tropicana shared a common hall with the La Playa; and he knew that the La Playa served alcohol. Connolly also knew that the Tropicana and the La Playa were two different businesses owned by separate people.

After breaking up an altercation which was brewing in front of the La Playa and asking the individuals to leave the property, Connolly entered The La Playa and observed plaintiff serving alcholic drinks to patrons. Connolly asked plaintiff if she was the bartender. When plaintiff replied that she was, Connolly told plaintiff that he was doing a bar check and requested to see her OLCC server's permit. When plaintiff could not locate her server's permit in her purse, she called the La Playa's owner, Ida Lafky and insisted that Connolly speak to Lafky. Lafky advised Connolly that plaintiff's permit was being renewed; that the OLCC had sent the renewed permit to the wrong address; and that the OLCC had advised Lafky that plaintiff could continue to serve liquor even though she did not physically have the permit because the OLCC had the permit on record. Lafky told Connolly that he could check plaintiff's permit status with the OLCC.

Connolly ended the phone call with Lafky when the individuals who he had earlier asked to leave the property returned to the hallway. Connolly went outside the La Playa to deal with these two individuals.

When Connolly returned to the La Playa, he placed plaintiff under arrest and transported her to the police station.

3 Opinion and Order

A copy of the renewal application was present at the La Playa in a file underneath the bar on the night Connolly arrested plaintiff. In her deposition, plaintiff testified that she found the file the morning after she was arrested; she did not look for it that night because there was "a lot of commotion." (Hernandez Deposition at 11:16-20.)

At the July 17, 2007 hearing, defendant's attorney noted that Connolly testified at deposition that the only way to contact the OLCC to determine whether a person has a valid server's permit was to contact the OLCC by phone during business hours-8:00 a.m to 5:00 p.m. (Connolly Deposition at 21: 13-24.)

### Standards

Summary judgment is appropriate where "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The initial burden is on the moving party to point out the absence of any genuine issue of material fact. Once the initial burden is satisfied, the burden shifts to the opponent to demonstrate through the production of probative evidence that there remains an issue of fact to be tried. <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986). Rule 56(c) mandates the entry of summary judgment against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be "no genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial. The moving party

4 Opinion and Order

is "entitled to a judgment as a matter of law" because the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof. Id. at 32. There is also no genuine issue of fact if, on the record taken as a whole, a rational trier of fact could not find in favor of the party opposing the motion. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586, 106 S.Ct. 1348, 1355 (1986); Taylor v. List, 880 F.2d 1040 (9th Cir. 1989).

On a motion for summary judgment, all reasonable doubt as to the existence of a genuine issue of fact should be resolved against the moving party. Hector v. Wiens, 533 F.2d 429, 432 (9th Cir. 1976). The inferences drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion. Valadingham v. Bojorquez, 866 F.2d 1135, 1137 (9th Cir. 1989). Where different ultimate inferences may be drawn, summary judgment is inappropriate. Sankovich v. Insurance Co. of North America, 638 F.2d 136, 140 (9th Cir. 1981).

### Discussion

Defendants assert that they are entitled to summary judgment on all of plaintiff's claims. Defendant Connolly asserts that he is protected from suit by qualified immunity. Defendant City asserts that it is immune from suit under Monell v. New York City Dept. of Social Services, 436 U.S. 658, 692 (1978).

///
///
///
///

5 Opinion and Order

## A. Probable Cause

Defendants argue that there is no issue of fact concerning whether Connolly had probable cause to arrest plaintiff and, therefore, defendants are entitled to summary judgment on plaintiff's 42 U.S.C. § 1983 illegal arrest claim (claim 1), her false arrest claim against the City (claim 3), her malicious prosecution claim against the City (claim 4), and her false imprisonment claim( claim 5).

The La Playa and Tropicana are establishments which are open to the public. There is no reasonable expectation of privacy in a public place. See, e.g., Rawlings v. Kentucky, 448 U.S. 98, 104(1980). Here, Connolly entered the Tropicana, which is a public establishment, and observed alcoholic beverage containers that were on tables in plain view. He then went into the La Playa, which was also open to the public. The court finds that there is no issue of fact concerning the reasonableness of Connolly's entry into either the Tropicana or the the La Playa.

A warrantless arrest of an individual in a public place for a misdemeanor committed in an officer's presence is consistent with the Fourth Amendment if the arrest is supported by probable cause. United States v. Watson, 423 U.S. 411, 424 (1976). Probable cause to arrest exists if, at the moment of arrest, the facts and circumstances known to the arresting officers are "sufficient to warrant a prudent man in believing that the [arrestee] had committed or was committing an offense." Beck v. Ohio, 379 U.S. 89,91,(1964). However, the creation of a pretext to justify an arrest violates the Fourth Amendment. United States v. Prim, 698 F.2d 972, 975 (9th Cir. 1983). Whether an

6 Opinion and Order

arrest is a based on a pretext turns on the motivation of the arresting officer. United States v. Smith, 802 F.2d 1119, 1124 (9th Cir. 1986).

Here, Connolly saw empty alcohol bottles when he walked through the Tropicana. He knew that alcohol was not allowed in the Tropicana, and almost immediately after seeing the alcohol there, went into the La Playa and did a bar check.

At the moment that he arrested plaintiff Connolly had been informed that plaintiff had a valid server's permit, even though she was not in physical possession of it because of a mailing mix up. Lafky, the La Playa's owner, had advised Connolly that the OLCC had expressly stated that plaintiff could continue to serve alcohol while the permit was re-sent. Connolly knew that it was possible to call OLCC to check the status of a permit, but that it could only be done during business hours.

Additionally, the record shows that there is a conflict in Oregon law concerning whether a person selling or serving alcohol must be able to immediately present the permit upon demand. O.R.S. § 471.360 requires that a person serving alcohol shall have a valid service permit issued by the OLCC and shall make the service permit available "at any time while on duty for immediate inspection by...any...peace officer." Failure to produce a valid server's permit is a misdemeanor offense. In contrast, O.R.S. § 471. 375 provides that any person may mix, sell, or serve alcoholic beverages if the person prepares "in duplicate an application for a service permit prior to mixing, selling, or serving alcoholic beverages...." Oregon Administrative Rule 845-009-0010 provides that, pursuant to O.R.S. § 471.375, some

7 Opinion and Order

service permit applicants may begin selling or serving alcohol after the applicant completes an official service permit and an authorized person endorses and sends the application to the OLCC. OR ADC 845-009-0010.

Because of this conflict, it is possible for a server to be in violation of § 471.360, while nonetheless complying with § 471.375 and Oregon Administrative Rule 845-009-0010.

Given that Connolly had information that plaintiff had a valid permit which was not in her possession due to a mailing mix-up and given the conflict in Oregon's statutes[1], it was not reasonable for Connolly to arrest plaintiff on the § 471.360 misdemeanor charge, without a warrant, at approximately 1:00 a.m. If Connolly had concerns about plaintiff serving alcohol without a valid permit, he could have shut down the La Playa (or at least informed Hernandez that she could no longer serve alcohol until her permit could be verified). This would have given Connolly a chance to verify the plaintiff's permit with the OLCC during business hours or to get a warrant for plaintiff's arrest from the District Attorney. Encouraging officers to arrest citizens, without a warrant late at night, on such a dubious misdemeanor charge (given the co-existence of § 471.375), is neither in society's best interest, nor is it good (i.e. reasonable) policing.

///

---

[1] The court does not expect the burden of resolving a statutory conflict to rest on a police officer; however, the court concludes that it is reasonable for an officer to be familiar with the relevant statutes and to discuss such conflicts with the District Attorney before making warrantless arrests based on a statute which is contradicted by another statute.

8 Opinion and Order

Given the information that Connolly had, he should have conducted additional investigation before rushing for the handcuffs. One may infer from the circumstances that the officer did not care whether Lafky's explanation was true, as he had the technicality on which to base an arrest (the permit was not physically present). However, given the counterweight of §471.375 and the related Oregon Administrative Rule, he needed to be more thorough in his investigation before making this particular warrantless arrest.

Furthermore, there is an issue of fact regarding whether Connolly's reason for arresting plaintiff was pretextual. Connolly saw alcoholic beverage bottles on tables in the Tropicana, knew that the Tropicana was a dance club for minors, and wanted to know "why there was alcohol allowed in that particular business." (Connolly Deposition at 11:16-25.) Shortly after seeing the alcohol in the Tropicana, Connolly entered the La Playa, observed plaintiff serving alcohol, and did a bar check. Connolly subsequently arrested plaintiff when she could not produce a copy of her server's license.

As previously discussed, Connolly could have chosen another course of action to determine whether plaintiff was, in fact, serving alcohol without a valid OLCC permit. He could have instructed Hernandez to cease serving for that night. The next day, Connolly could have contacted the OLCC to verify plaintiff's permit or sought an arrest warrant from the District Attorney for violation of the 417.360 misdemeanor charge. Connolly, however, chose not to investigate the information he had that plaintiff had a valid permit and simply decided to take her to jail.

9 Opinion and Order

In summary, the record reveals the following facts: Connolly felt that the Plaza Del Sol was a "trouble spot;" he entered the Tropicana that night, to check on a pepper sprayed man; Connolly contacted plaintiff only after seeing alcohol bottles in the Tropicana club; and, despite information that plaintiff had a valid server's permit, he chose to not investigate this information and opted instead to take her to jail. These facts raise an issue of Connolly's motivation for arresting plaintiff. Based on these facts, Connolly might have used the § 471.360 misdemeanor charge as a pretext for arresting plaintiff because he suspected she had been serving alcohol to minors. Clearly, he lacked probable cause for the latter offense: the alcohol containers in the Tropicana may or may not have been purchased at the La Playa; the purchases may or may not have been by minors; the bartender may or may not have been plaintiff. At the time he arrested plaintiff, officer Connolly simply had no information regarding such matters.

These factual issue must be resolved by a jury. Accordingly, the court finds that summary judgment on the probable cause issue is not appropriate because there is an issue of fact concerning whether the reason for plaintiff's arrest was pretextual and, therefore, violated the Fourth Amendment.

**B. Qualified Immunity**

Defendants contend that Connolly is protected from suit by qualified immunity. "[G]overnment officials performing discretionary functions [are entitled to] a qualified immunity, shielding them from civil liability as long as their actions could have reasonably been thought consistent with the rights

10 Opinion and Order

they are alleged to have violated." Anderson v. Creighton, 483 U.S. 635, 638 (1987) (citations omitted).

The Supreme Court has clarified that the qualified immunity analysis is a three-part inquiry. Saucier v. Katz, 533 U.S. 194, 201 (2001). First, the court must consider whether the facts taken in a light most favorable to the party asserting the injury show that the defendants violated the plaintiff's constitutional right. Id. Next, the court must determine if the right was clearly established at the time of the alleged violation. Id. A constitutional right is clearly established if the contours of the right are sufficiently clear that a reasonable official would understand that what he or she was doing violated that right. Anderson, 483 U.S. at 640. Finally, the court must determine whether a reasonable officer in these circumstances would have thought that his or her conduct violated the alleged right. Saucier, 533 U.S. at 201.

Defendants assert that, even taking the facts in a light most favorable to plaintiff, she cannot show that Connolly violated the Fourth Amendment when he arrested her without a warrant because he had probable cause to arrest her for a violation of § 471.360. Defendants are correct that commission of a misdemeanor in an officer's presence provides probable cause for an arrest; however, the facts viewed in a light most favorable to plaintiff show a violation of her Fourth Amendment rights.

Evidence concerning a defendant's subjective intent is generally irrelevant in a qualified immunity defense, but a defendant's state of mind is relevant where it is an element of

11 Opinion and Order

the alleged constitutional violation. <u>Crawford-El v. Britton</u>, 523 U.S. 574, 589 (1998). Here, Connolly's subjective intent is relevant to whether Connolly violated the Fourth Amendment by using a pretext to justify plaintiff's arrest. The facts viewed in a light most favorable to plaintiff, could justify the conclusion that the arrest for not producing a server's permit was a pretext for arresting plaintiff for serving alcohol to minors.

It is clearly established that probable cause is needed for a warrantless arrest and that an arrest based on a pretext violates the Fourth Amendment.

A reasonable officer in Connolly's circumstances would have known that arresting plaintiff for a pretextual reason violated her Fourth Amendment rights. The reasonableness of Connolly's conduct cannot be ascertained without resolution of the factual issue of whether plaintiff's arrest was pretextual.

Even if there was no evidence of a pretextual arrest, Connolly would not be entitled to qualified immunity. Qualified immunity is applicable if an officer makes a reasonable mistake of fact, or a reasonable mistake of law. <u>Saucier</u>, 533 U.S. at 205-06. In order for an officer to make an unreasonable mistake of law, the applicable law must "put the officer on notice that his conduct would be clearly unlawful" given the circumstances of the case. <u>Id.</u> at 202. Here, Connolly's mistake was unreasonable because Connolly, as a police officer, was charged with knowledge of both § 471.360 and § 471.375; therefore, he should have been aware of the conflict between the statutes. Additionally, Connolly had information that plaintiff had a valid server's

12 Opinion and Order

permit and had express permission from the OLCC to serve, even though the permit was not in her physical possession. These circumstances (the conflict between § 471.360 and § 471.375 coupled with Connolly's information that plaintiff had a valid permit) would have put a reasonable officer on notice that his conduct was clearly unlawful. Accordingly, Connolly is not entitled to qualified immunity.

## C. Municipal Liability

Defendants argue that the City is shielded from liability on plaintiff's claims under <u>Monell v. New York City Dept. of Social Services</u>, 436 U.S. 658 (1978).

A municipality is not subject to liability for the constitutional violations of its employees based on respondeat superior, but it is subject to liability for its employees' constitutional violations resulting from official policy, custom, or practice of deliberate indifference to the rights of individuals. <u>Monell</u>, 436 U.S. at 691. A policy is a choice made by an official with final decision-making authority to follow a course of action from among various alternatives. <u>Oviatt v. Pearce</u>, 954 F.2d 1470, 1477 (9th Cir. 1992). To establish liability on a local governmental entity for failure to act to preserve constitutional rights in a civil rights suit, a plaintiff must establish: (1) that she possessed a constitutional right of which she was deprived; (2) that the municipality had a policy; (3) that this policy amounts to deliberate indifference to plaintiff's constitutional right; and (4) that the policy is the moving force behind the constitutional violation. <u>Canton v. Harris</u>, 489 U.S. 378, 389-91 (1989).

13 Opinion and Order

In support of her contention that an official city policy resulted in the violation of her constitutional rights, plaintiff points to police briefings which requested that officers drive through the Plaza Del Sol's parking lot on their way back from patrol assignments. She argues that, because Connolly conducted the briefings in his capacity as a supervisor, the drive through request constituted an official City practice or policy. There is no evidence here that Connolly was the final policy maker regarding patrol policies. Nothing in the record supports the conclusion that the drive through requests were the product of the City's official course of action. Pembaur v. City of Cincinnati, 475 U.S. 469, 483-84 (1986)(plurality opinion). The court finds that the City is entitled to summary judgment under Monell.

### D. Intentional Infliction of Emotional Distress

Plaintiff also brings an Oregon state law claim for intentional infliction of emotional distress. To successfully plead such a claim, plaintiff must show that: (1) defendant intended to inflict severe mental or emotional distress or that distress is certain or substantially certain to result from defendant's conduct; (2) defendant's acts caused plaintiff severe emotional or mental distress; and (3) defendant's acts consisted of some extraordinary transgression of the bounds of socially tolerable conduct. McGanty v. Staudenraus, 321 Or. 532, 543 (1985).

The intent element may be satisfied when a defendant knows that severe distress is certain or substantially certain to result from his conduct. Id. at 550-51. A court considers

14 Opinion and Order

whether conduct is socially tolerable on a case-by-case basis. Buckel v. Nunn, 133 Or. App. 399, 404 (1995). Justification is a complete defense to a plaintiff's claim of intentional infliction of emotional distress. Gigler v. City of Klamath Falls, 21 Or. App. 753, 763 (1975).

Here, Connolly arrested plaintiff in the La Playa, placed her in the back of a police car, and took her to the police station at approximately 1:00 a.m. Connolly should have been substantially certain that plaintiff would suffer severe distress as a result of the arrest. Connolly's conduct in arresting plaintiff, however, does not amount to an "extraordinary transgression of the bounds of socially tolerable conduct" so as to give rise to an intentional infliction of emotional distress claim. McGanty, 321 Or. at 550-51. The evidence shows that Connolly was acting in the normal course of duty when he arrested plaintiff. Plaintiff alleges that the arrest was motivated by racial bias against Hispanics, but she does not allege that any racial slurs were used during or before her arrest. She does not allege that there was any threat of or actual force. Although summary judgment on plaintiff's Fourth Amendment claim is not appropriate because a factual dispute exists regarding whether the stated reason for the arrest was pretextual, the court cannot find that Connolly's conduct in arresting plaintiff gives rise to an intentional infliction of emotional distress claim. Accordingly, defendants are entitled to summary judgment on this claim.

///
///

15 Opinion and Order

## Conclusion

For the above reasons, the court orders that:

1. Defendants' motion for summary judgment on plaintiff's first, third, fourth, and fifth claims is DENIED.

2. Defendant Connolly's motion for summary judgment based on qualified immunity is DENIED.

3. Defendant City's motion for summary judgment under Monell is GRANTED.

4. Defendants' motion for summary judgment on plaintiff's second claim is GRANTED.

This action will proceed against defendant Connolly on plaintiff's 42 U.S.C. § 1983 claim (first claim) and false imprisonment claim (fifth claim).

IT IS SO ORDERED.

Dated this 30T day of July, 2007.

THOMAS COFFIN
United States Magistrate Judge